IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| ROBIN PETROVIC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 06 C 6111 |
| | ) | |
| CITY OF CHICAGO, OFFICER JAMES | ) | |
| CHEVAS, OFFICER MARGARET | ) | Judge Guzman |
| BIRKENMAYER, OFFICER AXEL | ) | |
| VELAZQUEZ, OFFICER JOHN CRUZ, | ) | |
| OFFICER THEODORE MAGNO, SERGEANT | ) | Magistrate Judge Valdez |
| SPRANDEL AND UNKNOWN CHICAGO | ) | |
| POLICE OFFICERS, | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

## RESPONSE TO DEFENDANTS' MOTION TO BAR

Now comes Plaintiff, ROBIN PETROVIC, by and through her attorneys, LOEVY & LOEVY, and respectfully files this response to Defendants' Motion to Bar:

### Introduction

As this Court may remember, Plaintiff alleges that after calling the police for assistance, she was viciously beaten while handcuffed in the back of the squadrol. Specifically, Defendant Chevas kicked her in the head, stomped on her head and ear, and kicked her in the groin while calling her a "bitch" and a "cunt." Despite her obvious injuries, Chevas never offered nor provided Plaintiff with medical care.

Ms. Petrovic's experience was no aberration: In the ten years on the force, before he resigned after being videotaped stealing from an arrestee, Chevas racked up at least 50 reports of misconduct. The similarity of the complaints is as striking as their sheer numbers.

Among those complainants is J. Thomas. Mr. Thomas was savagely beaten by Chevas after he and his wife called the police to report a disturbance downstairs. Instead of arresting the offenders, Chevas handcuffed Mr. Thomas, threw him down 17 stairs, stomped on his head and ear, and lodged profane and derogatory terms at Mr. Thomas and his wife. See Ex. A, C.R. 235179, at C2123, C2156-57. Chevas never provided Mr. Thomas with any medical attention even though Mr. Thomas was on the floor, bloody and unconscious (as a result of Chevas's beating). See id. The Office of Professional Standards ("OPS") sustained Mr. Thomas's complaint and the Superintendent and Police Board recommended that Chevas be suspended for 10 days. See id. at C2123, C2354.

Due to the similarities in Chevas's treatment of Plaintiff and Mr. Thomas, Plaintiff has named Mr. Thomas as a Fed.R.Evid. ("Rule Evid.") 404(b) or impeachment witness. Before even taking his deposition, or a trial date being set, the Defendants have sought to bar him from testifying in this matter. As made plain below, the Defendants Motion has no merit and Mr. Thomas should be allowed to testify in Plaintiff's case.

### Rule 26(b) Governs Discovery at this Stage

No trial date has yet been set in this action. Therefore, at this stage of litigation, discovery is governed by Fed.R.Civ.P. ("Rule") 26(b). Rule 26(b) permits discovery on any matter reasonably calculated to lead to admissible evidence. As Kodish v. Oakbrook Terrace Fire Protection Dist., 235 F.R.D. 447, 450 (N.D. Ill. 2006) makes plain, "the scope of discovery should be broad in order to aid in the search for truth."

Mr. Thomas's testimony clearly fits within Rule 26(b)'s confines. Defendants do not dispute this, but instead seek to bring a motion in limine before the Court has a record on which

2

it may rule. Defendants, of course, have it backwards and their motion in limine is undoubtedly premature.

### J. Thomas's Testimony Meets the Rule 404(b) Threshold

Even if this Court chooses to apply Rule Evid. 404(b), it is beyond dispute that Mr. Thomas meets Rule Evid. 404(b)'s threshold for admissibility. United States v. Zapata, 871 F.2d 616, 620 (7th Cir. 1989) set out the four-part test for making Rule Evid. 404(b) determinations:

> whether (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed a similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

Mr. Thomas's testimony would meet each of these four prongs.

With regard to the first prong, Mr. Thomas's testimony is relevant to show Chevas's intent, plan, modus operandi and absence of mistake in physically abusing persons who call for police assistance and failing to provide them with medical care after he causes them injury.[1] See, e.g., Molnar v. Booth, 229 F.3d 593, 603, 604 (7th Cir. 2000) (finding another sexual harassment victim's testimony admissible to show absence of mistake); Wilson v. City of Chicago, 6 F.3d 1233, 1238 (7th Cir. 1993) (finding that where plaintiff claimed he was tortured into giving a confession, evidence that the same officers had tortured two other suspects was admissible to show intent, opportunity, preparation and plan); Edwards v. Thomas, 31 F. Supp. 2d 1069, 1074

---

[1] Defendants only address the relevance of Mr. Thomas's testimony regarding Chevas's failure to provide medical attention, but his testimony is relevant for several other reasons, including his plan, intent, and m.o. to retaliate against people requesting help from the police, to retaliate with violence and to stomp on their head and ear.

3

(N.D. Ill. 1999) (finding prior complaint of excessive force by officer admissible where it also involved kicking an arrestee in the groin during an arrest).

The striking similarities between Plaintiff's allegations and Mr. Thomas's experience are sufficiently idiosyncratic to suggest that Chevas had a plan, intent and modus operandi to abuse suspects. Both Plaintiff and Mr. Thomas were beaten after calling the police for assistance. Moreover, both were also beaten in a highly analogous manner: Plaintiff and Mr. Thomas were handcuffed and had their heads stomped on by Chevas. As Ms. Petrovic testified, Defendant Chevas "lifted up his foot . . . and slammed it down as hard as he could onto my ear and ground his heel into my ear so that my face was, like, completely smashed between his foot and the metal floor." Ex. B, Petrovic Dep., at 178.

The only documents regarding Mr. Thomas's injuries at this stage were created by the Defendant City; Plaintiff has not had any opportunity to develop the record through discovery. In Plaintiff's counsel's experience, statements to and findings of OPS are often slanted in favor of the accused police officer by the investigator. Nevertheless, in this instance, OPS sustained Mr. Thomas's allegations that Chevas "threw him on the kitchen floor, placed his foot against [his] neck and pushed his face against the floor." Ex. A, C.R. 235179, at C2156.

These allegations are not only distinct enough to suggest that Chevas had a plan, intent and modus operandi to abuse suspects, but also to satisfy Zapata's second, "strikingly similar" standard. In Edwards, 31 F. Supp. 2d at 1075, the court found that "kicking an arrestee in the groin during an arrest" was sufficiently similar to meet Zapata's threshold. That same reasoning can apply here: stomping on an arrestee's head and ear, while the arrestee is handcuffed, also amounts to distinct and strikingly comparable conduct.

4

Moreover, the seven-year time difference between Mr. Thomas's allegations and the incidents underlying Plaintiff's complaint is not so large as to preclude Mr. Thomas's testimony. Courts have found allegations that are 13 years-old close enough in time to provide admissible evidence of prior bad acts. See United States v. Wimberly, 60 F.3d 281, 285 (7th Cir. 1995); see also United States v. Hurn, No. 06-3666, 2007 WL 2215765, *3 (7th Cir. Aug. 3, 2007) (finding that 10 year-gap sufficiently close in time to be admissible); United States v. Macedo, 406 F.3d 778, 793 (7th Cir. 2005) (9 year-gap between prior conduct and conduct charge close enough in time to make prior act admissible). Here, Plaintiff is proposing testimony that occurred much more recently -- indeed, half of the time that Wimberly found to fall within the second Zapata factor.

With regard to the third Zapata factor, under Edwards there is no doubt that Mr. Thomas's testimony meets the Rule Evid. 404(b) threshold. Mr. Thomas's complaint against Chevas represents the rare situation in which OPS sustained a complaint. Edwards holds that "where such a complaint *is* sustained 'the evidence is sufficient to support a jury finding that the defendant committed the similar act.'" 31 F. Supp. 2d at 1074-75 (citations omitted) (emphasis in original). Defendants' attempt to muddy this issue by suggesting that because Mr. Thomas settled his claim against Chevas, his allegations could not support a jury finding, are therefore simply that: attempts to confuse the issue. Standing alone, Mr. Thomas's testimony is enough to support a jury finding. Defendants, however, are attempting to muzzle him before he even has the chance to go on the record.

Finally, Mr. Thomas's testimony meets the fourth Zapata factor: its probative value will outweigh any unfair prejudice. Defendants' arguments to the contrary are without merit. The

5

Defendants claim that a jury instruction would not be sufficient to mitigate any prejudice. But the Defendants have cited no authority for such a proposition nor can they: the Seventh Circuit has repeatedly found jury instructions to be sufficient to cure any unfair prejudice, even in criminal cases where an individual's liberty is at stake. See, e.g., United States v. Hernandez, 84 F.3d 931, 935-36 (7th Cir. 1996); Edwards, 31 F. Supp. 2d at 1075. Defendants offer no explanation for why this case should be any different.

In addition, the Defendants argue that allowing Mr. Thomas to testify will result in a "trial within a trial" because it will force Chevas to call witnesses to rebut Mr. Thomas's allegations. Defendants cite as support Heflin v. City of Chicago, 1996 WL 28238, *1 (N.D. Ill. Jan. 22, 1996) but in that unpublished case, the Court ruled on the City's motion in limine (to bar prior complaints of excessive force) without any objection from plaintiff. More recent jurisprudence in this Circuit has found that the potential need to rebut allegations of prior bad acts is not a barrier to admissibility, particularly for sustained complaints, such as Mr. Thomas's complaint. See Edwards, 31 F. Supp. 2d at 1075. Moreover, in this case, it is highly unlikely that there would be any civilian rebuttal witnesses, as the Defendants have claimed in their brief. According to the City's own investigator, all of the witnesses saw Mr. Thomas's brutal beating, and would therefore corroborate rather than rebut Mr. Thomas's claims.

Thus, Mr. Thomas's testimony meets the threshold for Rule Evid. 404(b). He should be permitted to testify regarding his beating by Chevas at trial in this matter.

### J. Thomas's Testimony is Admissible to Impeach Chevas

Finally, in addition to using Mr. Thomas's testimony for Rule Evid. 404(b) purposes, it could provide relevant impeachment evidence. See Wilson, 6 F.3d at 1238 (finding that

6

evidence of other incidents of torture of suspects by the same police officers could be used at trial to impeach any officers that deny ever engaging in such conduct). At his deposition, Chevas denied engaging in any misconduct in any of his interactions with citizens who complained about him.

### Defendants' Alternative Relief is Not Warranted

Tacked on to the end of their motion is a request that this Court bar Plaintiff from calling any other Rule Evid. 404(b) witnesses that Plaintiff is still trying to contact. This action is wholly unwarranted.

Plaintiff was only given the names of potential Rule Evid. 404(b) witnesses at the very end of July. Thereafter, Plaintiff gave Defendants notice that she intended to contact each of them in an effort to find witnesses who would agree to cooperate, but underscored that she was doing so with as much deference and understanding as possible so as not to violate this Court's order. See Ex. C, letter dated Aug. 10, 2007. Plaintiff is willing to accommodate Defendants' desire to depose witnesses willing to participate in this action, including J. Thomas, once they come forward. At this juncture, however, without even a trial date in this matter, it is simply unnecessary to preemptively bar any such witnesses.

WHEREFORE, Plaintiff respectfully requests that this Court deny the Defendants' Motion to Bar, and deny any other relief requested therein.

RESPECTFULLY SUBMITTED,

/s/Gayle Horn
Attorneys for the Plaintiff

Arthur Loevy
Jon Loevy
Russell Ainsworth
Gayle Horn
Loevy & Loevy
312 N. May Street, Suite 100
Chicago, IL 60607
(312) 243-5900

## CERTIFICATE OF SERVICE

I, Gayle Horn, an attorney, certify that on September 18, 2007, I served this document by ECF electronic filing as to each party who is represented by counsel who uses electronic filing and by facsimile to all other counsel.

/s/Gayle Horn