IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| ROBIN PETROVIC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 06 C 6111 |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, PHILIP CLINE, | ) | JUDGE GUZMAN |
| former Superintendent of the | ) | |
| Chicago Police Department, | ) | |
| TISA MORRIS, former Chief | ) | |
| Administrator of the Office of | ) | |
| Professional Standards, OFFICER | ) | |
| JAMES CHEVAS, OFFICER MARGARET | ) | |
| BIRKENMAYER, OFFICER AXEL | ) | |
| VELAZQUEZ, OFFICER JOHN CRUZ, | ) | |
| OFFICER THEODORE MAGNO, SERGEANT | ) | |
| LAWRENCE SPRANDEL AND UNKNOWN | ) | |
| CHICAGO POLICE OFFICERS, | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

## AMENDED COMPLAINT

NOW COMES Plaintiff, ROBIN PETROVIC, by her attorneys LOEVY
& LOEVY, and complaining of Defendants, OFFICER JAMES CHEVAS,
OFFICER MARGARET BIRKENMAYER, OFFICER AXEL VELAZQUEZ, OFFICER
JOHN CRUZ, OFFICER THEODORE MAGNO, SERGEANT LAWRENCE SPRANDEL and
UNKNOWN CHICAGO POLICE OFFICERS (hereinafter, collectively
"Defendant Officers"), PHILIP CLINE, TISA MORRIS and the CITY OF
CHICAGO, states as follows:

### Introduction

1.   This action is brought pursuant to 42 U.S.C. Section
1983 to redress the deprivation under color of law of Plaintiff's
rights as secured by the United States Constitution.

## Jurisdiction and Venue

2.    This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331 and 1367.

3.    Venue is proper under 28 U.S.C. § 1391(b). All parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred within the district.

## Parties

4.    Plaintiff Robin Petrovic is a 30 year-old English lecturer at the University of Illinois-Chicago. She has been teaching English for the past seven years.

5.    Ms. Petrovic received her B.S. from the University of Illinois at Urbana-Champaign and her Master's degree in Literature from Illinois University.

6.    Ms. Petrovic stands all of five feet five inches tall and weighs 125 pounds.

7.    Defendants James Chevas, Margaret Birkenmayer, Axel Velazquez, Theodore Magno, Lawrence Sprandel and John Cruz are Chicago Police Officers. At all times relevant to this Complaint, the Defendant Officers acted under color of state law as police officers of the City of Chicago and acted within the scope of their employment.

8.    Defendant Philip Cline is the former Superintendent of the Chicago Police Department, and at all times relevant to this Complaint acted in the course and within the scope of his

employment as such. Superintendent Cline is sued in his individual capacity.

9. Defendant Tisa Morris was the chief administrator of the Chicago Police Department's Office of Professional Standards ("OPS"), and at all times relevant to this Complaint acted in the course and within the scope of her employment as such. Morris is sued in her individual capacity for her actions and omissions, by virtue of her authority as Chief Administrator of the OPS.

10. Defendant City of Chicago ("City") is an Illinois municipal corporation that operates the Chicago Police Department ("Department"). The City Council is the final policy maker for the City with regard to police policies and practices. The City Council has delegated to the Superintendent of Police the authority and responsibility for the day-to-day operation of the Department.

## Plaintiff's Allegations

11. On or about July 24, 2005, Ms. Petrovic requested that someone call the police after she was the victim of a battery.

12. After the Defendant Officers responded, they asked Ms. Petrovic to sign a blank criminal complaint against her assailant. Not wanting to sign a blank criminal complaint, Ms. Petrovic asked the Defendant Officers if either they or she could fill out the narrative of the complaint.

3

13.   When the Officers refused her request, Ms. Petrovic asked them for their names and badge numbers, which some of them would not give to her.  She did not have anything with or on which to write those numbers, so she used a passerby's cell phone to call her own cell phone and leave a message with the Defendant Officers' information.

14.   As she was leaving herself this message, she was struck on the head, thrown against a car and onto the ground, hit and choked by the Defendant Officers.

15.   She was then handcuffed and placed in a squadrol.  At this point, Ms. Petrovic was completely defenseless and terrified for her physical safety.

16.   Although she was handcuffed and secured in the squadrol, Defendant Chevas entered the squadrol and threw Plaintiff onto the ground face first.  Defendant Chevas then began kicking and hitting Plaintiff, including but not limited to repeatedly kicking her in the head.  Defendant Chevas also kicked Plaintiff between her legs and made derogatory and lewd comments to Ms. Petrovic, calling her a "cunt."

17.   After the beating, Ms. Petrovic was taken to a police station.  Ms. Petrovic asked the Defendant Officers if she could go to the hospital, but her request was refused.

18.   Ms. Petrovic was not taken to the hospital for treatment until approximately 10 hours after her arrest.

4

19. At no point did Plaintiff commit a crime or take any action to give the Defendant Officers probable cause to believe that she had committed a crime.

20. Nevertheless, Ms. Petrovic was falsely charged with aggravated battery by the very Defendant Officers who had beaten her. These Defendant Officers initiated a prosecution based on their allegation that Plaintiff--a five foot five inch, 125 pound female crime victim--pulled a police officer out of his car and battered him. This wholly false charge was later dismissed in a manner indicative of Ms. Petrovic's innocence.

21. As a result of Defendant Officers' brutal beating and the false charges they lodged against her, Ms. Petrovic has suffered serious injuries. Pictures taken of Plaintiff shortly after the incident depict the substantial physical injuries resulting from the Defendant Officers' unjustified use of force. Both of her eyes are swollen and black and her body is covered in bruises, including her groin. Copies of these photos are hereby incorporated into this Complaint as Exhibit A.

22. In addition to these physical injuries, Plaintiff, a lecturer in English with an advanced degree, was emotionally traumatized by the severity of her beating and the injustice of the aftermath.

23. Plaintiff has spent thousands of dollars to treat all of her physical and emotional ailments, as well as to hire

lawyers to defend herself against the Defendant Officers' false charges. The violations perpetrated by Defendants damaged Plaintiff's professional reputation and interfered with her employment.

## Defendant Chevas

24. Unfortunately, Plaintiff is not the only victim of Defendant Chevas's misconduct.

25. Over the past few years, Defendant Chevas has perpetrated abuses on several unrelated victims. Despite being on notice of these abuses, the City never took any action to discipline Chevas until he was actually caught on videotape.

26. Specifically, in November 2005, Chevas stole credit cards from a criminal suspect and used them to make approximately $1,600 in illegal purchases. At least one of those purchases was captured by a store's video surveillance.

27. Chevas has since been indicted and stripped of his police powers.

28. Plaintiff tried to complain about Defendant Chevas and the other Defendant Officers the very day she was beaten. Her complaints, however, were ignored by the OPS, which summarily dismissed her complaint.

## City of Chicago's Failure to Train, Discipline and Control

29. The City's inaction regarding Officer Chevas is just one example of the City's widespread failure control its

6

officers. The City maintains a *de facto* policy, practice and custom of failing to train, supervise, discipline, and control its police officers.

30. Municipal policy-makers have long been aware of the City's policy and practice of failing to properly train, monitor and discipline its police officers:

a. Following two high profile, unjustified police shootings in 1999, the City Council held public hearings. On September 28, 1999, then-Superintendent of the Chicago Police Department Terry Hillard gave a speech highlighting the problems with the City's policies and practices relating to the use of force. Superintendent Hillard specifically noted the need for (1) better in-service training on the use of force; (2) early detection of potential problem officers and (3) officer accountability for the use of force.

b. In a review commissioned by the then-Superintendent, John Marshall Law School found that although the City's policies on the use of force were in compliance with the law, more training of police officers was necessary.

c. Moreover, in January 2000, the Chairman of the Committee on Police and Fire of the Chicago City Council submitted an official resolution recognizing that "[Chicago] police officers who do not carry out their responsibilities in a professional manner have ample reason to believe that they will

7

not be held accountable, even in instances of egregious misconduct."

d.    A study performed a year later by the Justice Coalition of Greater Chicago ("JCGC"), a coalition of more than a hundred community groups, confirmed that resolution. Specifically, the JCGC study concluded that the Chicago Police Department lacked many of the basic tools necessary to identify, monitor, punish and prevent police misconduct and brutality.  The JCGC findings were presented to Mayor Daley, Superintendent Hillard and the Chicago Police Board.

e.    Two years later, Garcia v. City of Chicago, 2003 WL 22175618, *2 (N.D.Ill. Sept. 19, 2003) affirmed that the City's police misconduct investigations were systematically "incomplete, inconsistent, delayed, and slanted in favor of the officers" and as a result, fostered a culture of impunity within the Chicago Police Department.

f.    Indeed, by its own accounting, in 2004 the City sustained only four percent of the complaints brought against police officers for use of excessive force.  An even smaller percentage of officers were actually disciplined for such conduct.

31.  Although the City has long been aware that its supervision, training and discipline of police officers is entirely inadequate, it has not enacted any measures to address

8

that failure. Indeed, Defendants Morris and Superintendent Cline failed to reform the broken system in any meaningful way and the redress that was specifically promised by the City Council and then-Superintendent Hillard has gone unfilled.

32. In 1996, the City of Chicago intentionally abandoned a program designed to track police officers repeatedly acting in an abusive manner because of opposition by the Police Union. The City promptly deleted all data contained in the program, including the list of problem officers.

33. In 2000 and 2001, the City continued to refuse to implement a system allowing for detection of repeat police officer-offenders, despite the fact that the Commission on Accreditation for Law Enforcement Agencies adopted a standard mandating such a detection system for large agencies such as Chicago.

34. In 2003, although the City and the Police Union negotiated a new contract allowing the Chicago Police Department to use unsustained OPS cases "to identify patterns of suspected misconduct about which the public and regulatory agencies are so intensely and legitimately concerned," no such pattern analysis has ever been implemented. Indeed, pursuant to that contract, OPS records are only kept for seven years, precluding any meaningful long-term analysis of an officer's misconduct.

9

35. Finally, the City's training of its officers has not changed since 1999, despite repeated promises by the City and City policymakers for a more comprehensive training program.

## Count I -- 42 U.S.C. § 1983

### Excessive Force

36. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

37. As described in the preceding paragraphs, the conduct of Defendant Officers toward Plaintiff constituted excessive force in violation of the United States Constitution.

38. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

39. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

40. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in that:

a. As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

10

b.    As a matter of both policy and practice, the
Chicago Police Department facilitates the very type of misconduct
at issue here by failing to adequately punish and discipline
prior instances of similar misconduct, thereby leading Chicago
Police Officers to believe their actions will never be
scrutinized and, in that way, directly encouraging future abuses
such as those affecting Plaintiff; specifically, Chicago Police
Officers accused of excessive force can be confident that the OPS
will not investigate those accusations in earnest and will refuse
to recommend discipline even where the Officer has engaged in
excessive force;

c.    Generally, as a matter of widespread practice
so prevalent as to comprise municipal policy, officers of the
Chicago Police Department abuse citizens in a manner similar to
that alleged by Plaintiff in this Count on a frequent basis, yet
the Chicago Police Department makes findings of wrongdoing in a
disproportionately small number of cases;

d.    Municipal policy-makers are aware of, and
condone and facilitate by their inaction, a "code of silence" in
the Chicago Police Department, by which officers fail to report
misconduct committed by other officers, such as the misconduct at
issue in this case; and

e.    The City has failed to act to remedy the
patterns of abuse describe in the preceding sub-paragraphs,

11

despite actual knowledge of the same, thereby causing the types
of injuries alleged here.

41. The misconduct described in this Count was caused
by Defendants Cline and Morris (the "Supervisory Defendants") in
that:

a. The Supervisory Defendants knew that the City
maintained the widespread and settled policy and practice of
failing to adequately train, supervise, discipline, and otherwise
control its officers. They also knew that the maintenance of
these practices would result in preventable police abuse,
including the type of unconstitutional abuse inflicted on
Plaintiff.

b. The Supervisory Defendants oversaw,
acquiesced in, and even condoned the above-described policies and
practices and refused to take steps to correct them.

c. More specifically, the Supervisory Defendants
caused and participated in the denial of Plaintiff's
constitutional rights by, among other things:

- failing to monitor police officers and groups
  of officers who violate civilians'
  constitutional rights;

- failing to discipline police officers who
  violate civilians' constitutional rights; and

- failing to implement an effective early
  warning system to identify police officers and
  groups of officers who systematically violate
  civilians' constitutional rights.

12

d.    With respect to the Defendant Officers in this case, the Supervisory Defendants knew that the Defendant Officers had a practice of committing misconduct similar to that alleged by Plaintiff. Yet, the Supervisory Defendants approved, assisted, condoned and/or purposely ignored the Defendant Officers' prior misconduct.

e.    As such, the Supervisory Defendants were, at all times material to this Complaint, deliberately indifferent to the rights and safety of Plaintiff.

42.   As a result of the unjustified and excessive use of force by Defendant Officers, the actions and inactions of the Supervisory Defendants and the City's policy and practice, Plaintiff has suffered pain and injury, as well as emotional distress.

43.   The misconduct described in this Count was undertaken by Defendant Officers and Supervisory Defendants within the scope of their employment and under color of law such that their employer, City of Chicago, is liable for their actions.

## Count II -- 42 U.S.C. § 1983

### Failure to Intervene

44.   Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

45.   One or more of the Defendant Officers had a reasonable opportunity to prevent another Officer from using excessive force

13

:

against Plaintiff had they been so inclined, but they failed to do so.

46. As a result of the Defendant Officers' failure to intervene, Plaintiff suffered pain and injury, as well as emotional distress.

47. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to the rights of others.

48. The misconduct described in this Count was undertaken by the Defendant Officers and Supervisory Defendants within the scope of their employment and under color of law such that their employer, City of Chicago, is liable for their actions.

49. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in the manner described more fully above.

50. The misconduct described in this Count was caused by the Supervisory Defendants in the manner described more fully above.

## Count III -- 42 U.S.C. § 1983

### False Arrest/Unlawful Detention

51. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

14

52.   As described more fully above, the Defendant Officers falsely arrested and unlawfully detained Plaintiff without legal justification.

53.   The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

54.   The misconduct described in this Count was undertaken by the Defendant Officers and Supervisory Defendants within the scope of their employment and under color of law such that their employer, City of Chicago, is liable for their actions.

55.   The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in the manner described more fully above.

56.   The misconduct described in this Count was caused by the Supervisory Defendants in the manner described more fully above.

57.   As a result of the above-described wrongful infringement of Plaintiff's rights, Plaintiff suffered damages, including but not limited to emotional distress and anguish.

### Count IV -- 42 U.S.C. § 1983

### Denial of Medical Attention

58.   Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

59. As described more fully above, after being beaten by Defendant Officers, Plaintiff repeatedly requested medical attention. Despite having actual knowledge of her serious medical condition, the Defendant Officers failed to provide Plaintiff with medical attention.

60. In this manner, the conduct of the Defendant Officers was objectively unreasonable and deliberately indifferent to Ms. Petrovic's objectively serious medical needs.

61. The misconduct described in this Count was undertaken by the Defendant Officers and Supervisory Defendants within the scope of their employment and under color of law such that their employer, City of Chicago, is liable for their actions.

62. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in the manner described more fully above.

63. The misconduct described in this Count was caused by the Supervisory Defendants in the manner described more fully above.

64. As a result of the Defendant Officers' objectively unreasonable conduct and deliberate indifference to necessary medical needs, Plaintiff suffered additional damages, including but not limited to mental distress and anguish.

16

## Count V -- 42 U.S.C. § 1983

### Conspiracy

65. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

66. As described more fully in the preceding paragraphs, prior to the assault and battery on Plaintiff described above, the Defendant Officers, acting under color of law and within the scope of their employment, entered into an agreement amongst themselves and other unknown police officers to deprive Plaintiff of her constitutional rights.

67. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

68. The misconduct described in this Count was undertaken by the Defendant Officers and Supervisory Defendants within the scope of their employment and under color of law such that their employer, City of Chicago, is liable for their actions.

69. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in the manner described more fully above.

70. The misconduct described in this Count was caused by the Supervisory Defendants in the manner described more fully above.

71. As a proximate result of this conspiracy, Plaintiff suffered damages, including the deprivation of Plaintiff's constitutional rights and emotional distress.

## Count VI -- 42 U.S.C. § 1983

### Equal Protection

72. Plaintiff realleges and incorporates each of the paragraphs of this Complaint as if restated herein.

73. As described more fully above, Defendants, all while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, denied Plaintiff equal protection of the law in violation of her constitutional rights.

74. Said treatment of Plaintiff was motivated by gender animus and constituted purposeful discrimination.

75. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

76. The misconduct described in this Count was undertaken by the Defendant Officers and Supervisory Defendants within the scope of their employment and under color of law such that their employer, City of Chicago, is liable for their actions.

77. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in the manner described more fully above.

78. The misconduct described in this Count was caused by the Supervisory Defendants in the manner described more fully above.

79. As a result of the above-described wrongful conduct, Plaintiff has suffered damages, including but not limited to, emotional distress and anguish.

### Count VII -- State Law Claim

### Malicious Prosecution

80. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

81. In the manner described more fully above, Plaintiff was improperly subjected to judicial proceedings unsupported by probable cause to believe that she had committed a crime. These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were terminated in Plaintiff's favor in a manner indicative of her innocence.

82. Specifically, the Defendant Officers accused Plaintiff of criminal activity knowing those accusations to be without probable cause and made statements to prosecutors with the intent of exerting influence to institute and continue judicial proceedings.

83. The Defendant Officers made statements regarding Plaintiff's alleged culpability with knowledge that the statements were false and perjured. In so doing, the Defendant

19

Officers fabricated evidence and withheld exculpatory
information.

84. The misconduct described in this Count was undertaken
with malice, willfulness, and reckless indifference to the rights
of others.

85. As a proximate result of this misconduct, Plaintiff
suffered injuries, including but not limited to emotional
distress.

86. The misconduct described in this Count was undertaken
by the Defendant Officers within the scope of their employment
and under color of law such that their employer, City of Chicago,
is liable for their actions.

## Count VIII -- State Law Claim

### Respondeat Superior

87. Each of the Paragraphs in this Complaint is
incorporated as if restated fully herein.

88. In committing the acts alleged in the preceding
paragraphs, the Defendant Officers were members and agents of the
Chicago Police Department acting at all relevant times within the
scope of their employment.

89. Defendant City of Chicago is liable as principal for
all torts committed by its agents.

## Count IX -- State Law Claim

### Indemnification

90.    Each of the Paragraphs in this Complaint is
incorporated as if restated fully herein.

91.    Illinois law provides that public entities are directed
to pay any tort judgment for compensatory damages for which
employees are liable within the scope of their employment
activities.

92.    The Defendant Officers are or were employees of the
Chicago Police Department, who acted within the scope of their
employment in committing the misconduct described herein.


    WHEREFORE, Plaintiff, ROBIN PETROVIC, respectfully requests
that this Court enter judgment in her favor and against
Defendants, OFFICER JAMES CHEVAS, OFFICER MARGARET BIRKENMAYER,
OFFICER AXEL VELAZQUEZ, OFFICER JOHN CRUZ, OFFICER THEODORE
MAGNO, SERGEANT LAWRENCE SPRANDEL, UNKNOWN CHICAGO POLICE
OFFICERS, PHILIP CLINE, TISA MORRIS, and THE CITY OF CHICAGO,
awarding compensatory damages and attorneys' fees, along with
punitive damages against the Defendant Officers and Supervisory
Defendants in their individual capacities, as well as any other
relief this Court deems just and appropriate.

**JURY DEMAND**

Plaintiff, ROBIN PETROVIC, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED,

_____
Attorneys for Plaintiff

Arthur Loevy
Jon Loevy
Russell Ainsworth
Gayle Horn
LOEVY & LOEVY
312 North May St
Suite 100
Chicago, IL 60607
(312) 243-5900

22