IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBIN PETROVIC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 06 C 6111 |
| | ) | |
| CITY OF CHICAGO, OFFICER | ) | Judge Ronald A. Guzmán |
| JAMES CHEVAS, OFFICER | ) | |
| MARGARET BIRKENMAYER, | ) | |
| OFFICER AXEL VELAZQUEZ, | ) | |
| OFFICER JOHN CRUZ, OFFICER | ) | |
| THEODORE MAGNO, SERGEANT | ) | |
| SPRANDEL, and UNKNOWN | ) | |
| CHICAGO POLICE OFFICERS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Robin Petrovic has sued the City of Chicago, Officers James Chevas, Margaret Birkenmayer, Axel Velazquez, John Cruz, Theodore Magno and Sergeant Lawrence Sprandel for depriving her of constitutional rights guaranteed by the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 as well as for malicious prosecution under state law. Before the Court is defendants' (sued in their individual capacity) motion for partial summary judgment and defendants' motion to strike certain responses and fact statements in Petrovic's summary judgment submissions. For the reasons provided herein, the Court grants in part, denies in part and strikes as moot in part defendants' motion for partial summary judgment and grants in part and denies in part defendants' motion to strike.

**Defendants' Motion to Strike**

As an initial matter, the Court grants in part and denies in part defendants' motion to strike certain responses and fact statements in Petrovic's summary judgment submissions. In

ruling on a summary judgment motion, the Court routinely determines, without guidance from the parties, whether (1) a denial of a fact statement is supported by a citation to the record; (2) a denial is responsive to a particular fact statement; (3) additional facts provided in response to a particular fact statement that do not directly deny the fact statement should be ignored; and (4) whether fact statements raise material issues of fact.  After having done so, the Court grants in part the motion and deems admitted the following paragraphs of defendants' fact statements for Petrovic's failure to comply with LR 56.1:  24, 41, 48, 55-56, 64, 67-69.  The Court denies the motion to deem admitted paragraphs 26-37, 44-45 and 53 of defendants' fact statements because the Court holds that plaintiff's denials are properly supported.

Further, exercising its discretion, the Court declines to strike particular paragraphs of plaintiff's LR 56.1 statement of additional facts on the basis that they contain multiple sentences within one numbered paragraph.  The Court will strike entire statements of fact when a party flouts the rule egregiously.  This is not one of those cases.  Accordingly, the Court denies defendants' motion to strike paragraphs 1, 3-6, 10, 17, 26, 28, 31, 38-39 of plaintiff's statement of additional facts.   The Court denies the motion to strike paragraph 9 because it is properly supported by the record.  The Court grants in part and denies in part the motion to strike paragraph 16 and strikes only that portion that states Petrovic left a message with the officers' badge numbers and changes it to the singular form, *i.e.*, officer's badge number.  The Court grants in part and denies in part the motion to strike paragraph 18 and strikes only the last two sentences because they are unsupported by the citation to the record.

# Defendants' Motion for Partial Summary Judgment

## Facts

At around 11:15 p.m. on July 23, 2005, Petrovic went with girlfriends to the Funky Buddha Lounge, after having met at one of their houses at which Petrovic drank one and three-fourths glasses of a fruit-blended vodka drink. (Defs.' LR 56.1(a)(3) ¶¶ 8-10.) At the Funky Buddha, she ordered a beer and a girlfriend bought a lemon drop shot for her, and she drank both of them. (*Id.* ¶ 10.) After Petrovic and her girlfriends danced for a while, she sat down at a booth. (*Id.* ¶ 11.)

At some point, another bar patron told her to move or she would have Petrovic thrown out. (*Id.* ¶ 12.) A waitress told Petrovic that she was sitting in a reserved area. (*Id.* ¶ 13.) The waitress summoned a bouncer and, according to Petrovic, the bouncer hit Petrovic on the head with a flashlight without provocation. (*Id.* ¶ 14.) The bouncer threw Petrovic on her back and then lay his body on top of her. (*Id.* ¶ 18.) Two male bar patrons attempted to pull the bouncer off of Petrovic. (Pl.'s LR 56.1(b)(3)(C) ¶ 5.) Petrovic reached for a nearby glass and hit the bouncer and then grabbed his testicles and squeezed them with all her strength. (Defs.' LR 56.1(a)(3) ¶ 16.) The bouncer pinned Petrovic's arms behind her back and removed her from the Funky Buddha Lounge via the front door. (*Id.* ¶ 17.) Petrovic was upset and requested that the police be called. (*Id.* ¶ 18.)

Officers Birkenmayer and Velazquez were the first to arrive on the scene. (*Id.* ¶ 19.) Soon after, Sergeant Sprandel arrived to check the liquor licenses for the Funky Buddha Lounge, which is standard protocol when the police are summoned to an establishment that serves alcohol. (*Id.* ¶ 20.) Officers Magno and Chevas, who are partners, stopped at the scene for safety reasons and because the nightclub was busy. (*Id.* ¶ 21.)

Birkenmayer interviewed the bouncer and the manager of Funky Buddha Lounge. (Pl.'s LR 56.1(b)(3)(C) ¶ 8.) After speaking to both of them, Birkenmayer told Petrovic that her story was checking out and that she was going to arrest the bouncer on Petrovic's complaint. (*Id.*) Birkenmayer then asked Petrovic to sign and swear to a blank complaint, which she said was her typical practice. (*Id.* ¶ 9; Defs.' LR 56.1(a)(3) ¶ 22.) Petrovic told Birkenmayer that she was not comfortable signing and swearing to a document without knowing its contents. (Pl.'s LR 56.1(b)(3)(C) ¶ 10.) Petrovic offered to go to the police station with the officers while they filled out the form. (*Id.*) Birkenmayer told Petrovic that they had already wasted enough time on her. (*Id.* ¶ 11.)

Birkenmayer then told Petrovic to speak to Sergeant Sprandel, who also refused to fill out the complaint before Petrovic signed it and told her that she needed to sign the blank complaint if she wanted the bouncer arrested. (*Id.* ¶ 12.) When Petrovic asked Sprandel for his badge number, he gave it to her, but he refused to give Petrovic the badge numbers of any of the other officers at the scene. (*Id.* ¶ 13.)

Petrovic then walked over to Birkenmayer and asked her for her badge number, which Birkenmayer refused to provide. (*Id.* ¶ 14.) However, Petrovic was able to see the number and memorize it and after obtaining a cell phone from a passerby, Barry Mack, she left a message on her voicemail with Birkenmayer's badge number. (*Id.* ¶¶ 15-16.) Petrovic then tried to read Chevas' badge number, but he covered it up so she could not see it. (*Id.* ¶ 16.) The parties dispute whether Birkenmayer or Chevas then struck Petrovic from behind, whether Chevas grabbed her and spun her around and slammed her against a squad car, and whether Chevas threw her into the street, where she landed on her back near oncoming traffic. (*Id.* ¶ 17.) The parties also dispute whether Chevas, Birkenmayer and Magno lifted her body and each leg off of

the ground.  (*Id.* ¶ 18.)  Petrovic then yelled out "I'm a teacher!" and "Freedom!" and it is disputed whether Chevas then shoved his hands into her mouth.  (*Id.* ¶¶ 18-19.)  While the parties do not dispute that Chevas' hand was injured, the dispute whether the injury was due to his shoving his hands in her mouth or Petrovic's unintentionally biting him while his hands were in her mouth.  (*Compare id.* ¶ 19, *with* Defs.' LR 56.1(a)(3) ¶ 27, *and* Pl.'s LR 56.1(b)(3)(B) ¶ 27.)  One or more of the officers placed Petrovic, who was handcuffed, in the squadrol.  (Defs.' LR 56.1(a)(3) ¶ 40.)

Though defendants dispute her version of events, Petrovic claims that:  (1) Chevas later entered the squadrol, picked her up, slammed her face into the floor and kicked her in the head three times in the same spot (*id.* ¶ 42); (2) Petrovic then said "You win." (Pl.'s LR 56.1(b)(3)(C) ¶ 22); (3) Chevas then slammed his foot down on her ear, ground her ear into the squadrol floor with his boot causing her faced to be smashed between his boot and the floor, kicked her hard in the genitals and called her a cunt before exiting the squadrol (*id.* ¶ 24; Defs.' LR 56.1(a)(3) ¶ 42); (4) after leaving the squadrol, Chevas said through the holes on the squadrol, "We're going to get you cunt." (Pl.'s LR 56.1(b)(3)(C) ¶ 25); and (5) another male stated, "Would you let that bitch teach your kids?" (*id.*).  It is undisputed that Petrovic had visible blood and lacerations on her face and back as well as bruising on her body.  (*Id.* ¶ 27.)

Mack, the bystander who had lent Petrovic his cell phone and was arrested for obstruction of justice as a result, heard thumps coming from Petrovic's compartment of the squadrol while he was locked up in a separate compartment of the squadrol.  (*Id.* ¶ 26.)  He heard a male call her a "cunt," "white bitch," and "whore."  (*Id.*)

Petrovic was transported to the 13th District police station. (*Id.* ¶ 28.) She asked Birkenmayer (in the presence of Velazquez) to take her to the hospital, but Birkenmayer said she had to do the paperwork first. (*Id.*) At the station, Mack saw that Petrovic had bruises on her face and arms. (*Id.* ¶ 27.)

On July 24, 2005, Birkenmayer submitted and signed a case report that stated that Petrovic had battered Chevas and Magno, and Sprandel signed off on the report. (*Id.* ¶ 29.)

At approximately 8:50 a.m., or six hours after she was arrested, Petrovic was taken to Area 4, where Cruz interviewed her. (Pl.'s LR 56.1(b)(3)(C) ¶ 30.) She asked Cruz to take her to the hospital. (*Id.*) Cruz told her that if she went to the hospital, she would have to come back to the interrogation room afterwards and so she acquiesced to being interviewed. (*Id.*) Petrovic told Cruz that Chevas had beaten her up. (*Id.* ¶ 31.) Cruz knew that lockup would not take Petrovic into custody without her having seen a doctor because of her obvious injuries. (*Id.* ¶ 33.) Cruz never told anyone other than Chevas and Magno about Petrovic's allegations. (Cruz Dep. at 46.)

After the interview, at 11:55 a.m., nine hours after she was arrested, police officers took Petrovic to a hospital. (Pl.'s LR 56.1(b)(3)(C) ¶ 34.) Afterwards, she was transported back to the police station, processed and taken to the lockup. (*Id.* ¶ 35.) While in the lockup, Petrovic gave Barbara Seiden, an investigator from the Office of Professional Standards, a detailed statement regarding the beating. (*Id.* ¶ 35.) On July 25, 2005, Petrovic's mother and brother bailed her out of jail. (*Id.* ¶ 36.)

Chevas told Cruz that Petrovic had grabbed the meaty part of his palm with her teeth. (Defs.' LR 56.1(a)(3) ¶ 67.) He also told Cruz that she was swearing, calling the officers names and kicking them as she was being arrested and put the squadrol. (*Id.* ¶ 68.)

Magno also told Cruz that Petrovic resisted arrest by kicking at the officers and would not go willingly into the squadrol. (*Id.* ¶ 69.) Magno also told Cruz that he saw a bite mark on Chevas after the incident was over. (*Id.*)

On that day, Chevas and Magno made an arrest report against Petrovic. (Pl.'s LR 56.1(b)(3)(C) ¶ 29.) The charge was approved by Assistant State's Attorney Fugate after speaking to Detective Cruz. (Defs.' LR 56.1(a)(3) ¶ 75.)

On August 15, 2005, Cruz testified before the grand jury that Petrovic grabbed Chavez by the shirt and bit him on the palm of his left hand and on the middle finger of his right hand, drawing blood. (*Id.* ¶ 76.) That same day, Petrovic was indicted for aggravated battery of a police officer. (*Id.*)

Veryl Gambino was one of the Assistant State's Attorneys assigned to *People v. Petrovic*, 05 CR 18417. (*Id.* ¶ 78.) Chevas refused to testify at Petrovic's trial. (Pl.'s LR 56.1(b)(3)(C) ¶ 37.) Thus, Gambino decided to *nolle prosequi* the case because she believed the State could not sustain its burden of proving the case beyond a reasonable doubt. (Defs.' LR 56.1(a)(3) ¶ 78.)

## Discussion

Summary judgment is to be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court

resolves all ambiguities and draws all reasonable inferences in favor of the nonmoving party. *Michas v. Health Cost Controls of Ill. Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). "A motion for summary judgment is not an appropriate occasion for weighing the evidence; rather, the inquiry is limited to determining if there is a genuine issue for trial." *Lohorn v. Michael*, 913 F.2d 327, 331 (7th Cir. 1990).

**Withdrawn Claims**

Plaintiff has withdrawn Counts I-IV and VI against Sprandel, Counts I-III, and VI against Cruz, Counts I and VI against Velazquez and Count VI as to Birkenmayer. Accordingly, the Court strikes these portions of defendants' motion for summary judgment as moot as to these claims.

**Waiver of Qualified Immunity**

The Court holds that, for the purposes of their summary judgment motion, defendants have waived their qualified immunity argument in support of which they offered only five sentences and one legal citation. *See United States v. Spiller*, 261 F.3d 683, 692 n.9 (7th Cir. 2001) (stating that arguments not developed are deemed waived).

**Count I:  Excessive Force**

With regard to Count I, Petrovic has raised triable issues as to whether Birkenmayer, Chevas, and Magno used excessive force to restrain her. To determine whether force used violates the Fourth Amendment, a court must ask whether the officer's actions are "objectively reasonable" in light of the totality of the circumstances, without regard to his underlying good or

bad intentions. *Smith v. City of Chi.*, 242 F.3d 737, 743 (7th Cir. 2001). The Court considers factors such as the severity of the crime, whether the suspect poses a threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Jacobs v. City of Chi.*, 215 F.3d 758, 773 (7th Cir. 2000).

Petrovic states that she was merely trying obtain Chevas' badge number when Birkenmayer or Chevas struck her from behind with a blunt object (Pl.'s LR 56.1(b)(3)(C) ¶ 17), Chevas slammed her into a squad car and threw her into the street and then after she was handcuffed, slammed her face onto the floor of the squadrol, and later stomped and ground his heel into her ear and kicked her hard in the genitals (*id.* ¶¶ 17, 19, 23, 24), and Magno and Birkenmayer picked her up by her legs and flipped her over and slammed her on the ground (*id.* ¶¶ 18-19). It is disputed whether Petrovic accidentally or intentionally bit Chevas or whether he injured himself when he shoved his hands in Petrovic's mouth. (*Compare id.* ¶ 19, *with* Defs.' LR 56.1(a)(3) ¶ 27, *and* Pl.'s LR 56.1(b)(3)(B) ¶ 27.) The parties agree that Petrovic had blood and lacerations on her back and face and Mack saw the bruising on her face and arms. (Pl.'s LR 56.1(b)(3)(C) ¶¶ 26, 27, 33.) A reasonable jury could conclude from Petrovic's version of the facts that Birkenmayer, Chevas and Magno's actions were objectively unreasonable in light of the totality of the circumstances.

**Count II: Failure To Intervene To Prevent Use of Excessive Force**

With regard to Count II, Petrovic has raised a genuine issue as to a material fact regarding whether Birkenmayer, Chevas and Magno failed to intervene in the use of excessive force. An officer has "'an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers.'" *Randall v. Prince George's*

*County*, 302 F.3d 188, 203 (4th Cir. 2002) (quoting *Anderson v. Branen*, 17 F.3d 552, 556 (2d Cir. 1994)). The Seventh Circuit has stated that such a duty attaches when an officer observes or has reason to know that a constitutional violation is being committed and possesses a realistic opportunity to intervene to prevent the harm from occurring. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). This standard recognizes that in certain limited circumstances bystanding officers are obligated to act. *Randall*, 302 F.3d at 204.

Given Petrovic's version of the facts, Birkenmayer, Chevas and Magno had reason to know that excessive force was being used against her and had a realistic opportunity to intervene to prevent the use of excessive force during the arrest. Further, viewing the facts and reasonable inferences drawn therefrom in Petrovic's favor, Magno also had a realistic opportunity to intervene when Chevas was beating Petrovic in the squadrol. Accordingly, the Court denies the motion for summary judgment as to Petrovic's failure to intervene claim against Birkenmayer, Chevas and Magno.

However, with regard to Velazquez, the undisputed facts in the record show that during Petrovic's arrest, he was interviewing the Funky Buddha Lounge bouncer who had battered Petrovic, and had his back to the crowd. (*Id.* ¶ 48.) By the time he got to the squadrol, Petrovic was already inside and the other officers were shutting the door and walking toward their vehicles. (Velazquez Dep. at 12.) Further, the record is devoid of evidence that Velazquez was present or aware of the incident involving Petrovic and Chevas in the squadrol. Velazquez did not participate in the arrest and did not have information that would raise an inference that he ignored the excessive force used. Thus no reasonable jury could find that he had a realistic opportunity to intervene and prevent the excessive force from occurring. The Court grants defendants' summary judgment motion as to the failure to intervene claim against Velazquez.

**Count III:  False Arrest**

With regard to Count III, there exists a triable issue of fact regarding the false arrest claim against Birkenmayer, Chevas and Magno. "It is well settled that the actual existence of probable cause to arrest precludes a § 1983 suit for false arrest." *Juriss v. McGowan*, 957 F.2d 345, 349 n.1 (7th Cir. 1992).  "If, however, the finding of probable cause is based on the defendant's intentional misrepresentation or concealment of material facts, the plaintiff may be able to proceed on a Fourth Amendment claim challenging the reasonableness of an arrest." *Schertz v. Waupaca County*, 875 F.2d 578, 583 (7th Cir. 1989).  To have probable cause for an arrest, "law enforcement agents must reasonably believe, in light of the facts and circumstances within their knowledge at the time of the arrest, that the suspect had committed or was committing an offense." *Washington v. Haupert*, 481 F.3d 543, 547 (7th Cir. 2007).

Viewing the facts in a light most favorable to Petrovic, she has presented evidence creating a genuine issue of material fact regarding whether Birkenmayer, Chevas and Magno had probable cause to arrest her for aggravated battery to a police officer and resisting arrest.  The parties dispute whether Chevas' hand was injured due to his shoving his hands in her mouth, Petrovic's unintentionally biting him while his hands were in her mouth or Petrovic's intentionally biting his hand at some other point that night.  (*Compare* Pl.'s LR 56.1(b)(3)(C) ¶ 19, *with* Defs.' LR 56.1(a)(3) ¶ 27, *and* Pl.'s LR 56.1(b)(3)(B) ¶ 27.)  It is also disputed whether Petrovic resisted arrest.  (Defs.' LR 56.1(a)(3) ¶ 37.)  Based on the facts in the record, a reasonable jury could find that Chevas injured his own hand by shoving it into Petrovic's mouth, and therefore the officers lacked probable cause to arrest her.  Further, the record shows that Birkenmayer and Magno were in close proximity to Chevas and Petrovic and a reasonable jury could conclude that they saw whether Chevas injured his own hand or whether Petrovic

11

accidentally or intentionally bit Chevas' hand and thus did not have to rely on Chevas' representations regarding whether Petrovic bit him.

However, with regard to Velazquez, the undisputed evidence shows that he did not participate in the arrest. As discussed above, he was speaking to a bouncer with his back to the crowd when the arrest took place and when he approached the squadrol, a person was already inside and the officers were closing the door and walking toward their vehicles. (Defs.' LR 56.1(a)(3) ¶ 48; Velazquez Dep. at 12, 94-95, 97.) While in his vehicle, Velazquez learned that a male and female had been arrested and that there was an altercation between Petrovic and the officers. (Velazquez Dep. at 100-01.) At the station, Velazquez did not assist Birkenmayer in filling out the case report involving Chevas and Magno as victims. (*Id.* at 111.) Given this evidence, no rational jury could find Velazquez liable for false arrest. The Court grants defendants' motion for summary judgment as to Count III as to Velazquez.

**Count IV: Denial of Medical Care**

With regard to Count IV, Petrovic has raised a genuine issue of fact as to whether Birkenmayer, Chevas, Magno, Velazquez and Cruz violated her constitutional rights when they denied her medical care. "Claims regarding conditions of confinement for pretrial detainees . . . , who have not yet had a judicial determination of probable cause (a Gerstein hearing), are . . . governed by the Fourth Amendment and its objectively unreasonable standard." *Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007) (noting that the Eighth and Fourteenth Amendments require a higher showing than the Fourth). There are "four factors that are relevant for ascertaining whether a defendant's conduct was objectively unreasonable." *Id.* "The first is that the officer be given notice of the arrestee's medical need, whether by word . . . or through

12

observation of the arrestee's physical symptoms." *Id.* The second is "the seriousness of the medical need, . . . [as indicated by whether] the plaintiff's complaints [a]re . . . accompanied by any physical symptoms." *Id.* "[T]he Fourth Amendment's reasonableness analysis operates on a sliding scale, balancing the seriousness of the medical need with the third factor-the scope of the requested treatment." *Id.* Fourth, "police interests also factor into the reasonableness determination. This factor is wide-ranging in scope and can include administrative, penological, or investigatory concerns." *Id.*

Petrovic states that, after she was handcuffed, Chevas slammed her face into the floor of the squadrol, kicked her in the head three times in the same spot, slammed his foot down on her ear, ground her ear into the squadrol floor with his boot causing her faced to be smashed between his boot and the floor and kicked her hard in the genitals. (Defs.' LR 56.1(a)(3) ¶ 42; Pl.'s LR 56.1(b)(3)(C) ¶ 24.) Petrovic had visible blood and lacerations on her face and back as well as visible bruising on her body. (Pl.'s LR 56.1(b)(3)(C) ¶ 27.) First, given the severity of harm Chevas allegedly inflicted, Petrovic has created a triable issue regarding whether Chevas had notice of Petrovic's serious medical need and whether it was obvious that he had injured her. *Cf. El-Uri v. City of Chi.*, 186 F. Supp. 2d 844, 847 (N.D. Ill. 2002). Second, a rational jury could infer from Magno's presence during this beating and the fact that he was Chevas' partner and the only other male involved in the arrest, that Magno saw Chevas beat Petrovic and yet did not take her to the hospital. (Pl.'s LR 56.1(b)(3)(C) ¶ 25; Defs.' Ex. A, Chevas Dep. at 96.) Third, Petrovic also states that she asked Birkenmayer to be taken to the hospital and Velazquez was present during this request, but neither of them did so despite the visible lacerations on her face and back and the visible bruising on her body. (Pl.'s LR 56.1(b)(3)(C) ¶¶ 27, 28.) Fourth, six hours later, after she was transported to Area 4, she asked Cruz to take her to the hospital. (*Id.* ¶

13

30.) Cruz admits that he knew that there was no way the lockup would accept Petrovic without medical clearance because of her obvious injuries. (*Id.* ¶ 33.) These facts are sufficient to preclude summary judgment as to Petrovic's denial of medical care claim against Chevas, Birkenmayer, Velazquez and Cruz. Whether Petrovic had any choice but to acquiesce to the delay in her medical treatment is a factor that a jury will weigh in determining whether her constitutional rights were violated.

### **Count V: Conspiracy**

With regard to Count V, Petrovic has raised triable issues regarding her section 1983 conspiracy claims against Birkenmayer, Chevas, Magno, Velazquez and Cruz. Petrovic "must show (1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement." *Scherer v. Balkema*, 840 F.2d 437, 441-42 (7th Cir. 1988). "To be liable as a conspirator you must be a voluntary participant in a common venture, although you need not have agreed on the details of the conspiratorial scheme or even know who the other conspirators are." *Jones v. City of Chi.*, 856 F.2d 985, 992 (7th Cir. 1988). "It is enough if you understand the general objectives of the scheme, accept them, and agree, either explicitly or implicitly, to do your part to further them." *Id.*

As outlined above, Petrovic has created a genuine issue of fact as to whether Birkenmayer, Chevas and Magno conspired to use excessive force to arrest her, refuse to intervene and falsely arrest her. A reasonable jury could conclude from the fact that these officers acted in concert while they used excessive force that there was an implied agreement to do so. Similarly, a rational jury could find that Chevas and Magno conspired to continue to use

14

excessive force, refuse to intervene and deprive her of her rights to equal protection after she was handcuffed and placed in the squadrol. Further, as outlined above, Petrovic has created a triable fact regarding whether Birkenmayer, Chevas, Magno, Velazquez and Cruz conspired to deny her medical care based on their concerted effort to deny her medical care despite her obvious injuries until nine hours after the time of her arrest.[1]

However, with regard to Sprandel, Petrovic has failed to raise a triable issue as to conspiracy. There is no evidence that he participated in the underlying constitutional violations, and the Court notes that Petrovic has withdrawn her claims against him as to each underlying constitutional violation. The record is devoid of any evidence that Sprandel knew of his subordinate officers' purportedly improper conduct, let alone facilitated, approved or condoned it. *See Jones*, 856 F.2d at 991-92. Defendants' motion with respect to Count V against Sprandel is, therefore, granted.

**Count VI: Equal Protection**

As for Count VI, Petrovic has sufficiently raised a genuine issue of material fact regarding whether Chevas and Magno denied her right to equal protection based on gender animus. "To state an equal protection claim, a § 1983 plaintiff must allege that a state actor purposefully discriminated against him because of his identification with a particular . . . group." *Sherwin Manor Nursing Ctr., Inc. v. McAuliffe*, 37 F.3d 1216, 1220 (7th Cir. 1994).

---

[1] The Court rejects defendants' argument that the intracorporate conspiracy doctrine bars this claim because courts have refused to apply the doctrine in police misconduct cases. *See, e.g., Fairley v. Andrews*, 300 F. Supp. 2d 660, 669 (N.D. Ill. 2004); *McDorman v. Smith*, No. 05 C 448, 2005 WL 1869683, at *6 (N.D. Ill. Aug. 2, 2005); *Moreno v. Town of Cicero*, No. 01 C 1726, 2002 WL 31017932, at *3 (N.D. Ill. Sept. 5, 2002).

Petrovic has stated that Chevas called her "cunt" as he was kicking and stomping her head on the floor of the squadrol and kicking her hard in the genitals and that a male, who may reasonably be inferred to be Magno, who was Chevas' partner, called her "bitch," "cunt," "white bitch," and "whore" during the altercation in the squadrol. Given the context in which these statements were made, especially in light of the fact that they were made during an encounter in which Chevas was kicking her genitals, a reasonable jury could infer that Chevas and Magno discriminated against Petrovic based on their gender animus. *See, e.g., Bell v. City of Chi.*, No. 03 C 2117, 2004 WL 3119014, at *12 n.11 (N.D. Ill. Dec. 20, 2004) (finding use of the word "whore" to be strongly suggestive of gender-based animus); *Reynolds v. Atl. City Convention Ctr. Auth.*, Civ. A. No. 88-4232, 1990 WL 267417, at *15 (D.N.J. May 26, 1990) (finding that use of the term "cunt" indicates gender-based animus), *aff'd*, 925 F.2d 419 (3d Cir. 1991). Accordingly, the Court denies the summary judgment motion as to Count VI.

## **Count VII: Malicious Prosecution**

Finally, the Court denies the motion for summary judgment as to Petrovic's malicious prosecution claim. To prove this claim, a plaintiff must establish that "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996) (citations omitted). Defendants do not argue that plaintiff has failed to raise a triable issue regarding the fifth factor, so the Court addresses only the first four factors.

Viewing the disputed facts in Petrovic's favor, she has created a triable issue as to the first factor. "Liability for malicious criminal prosecution is not confined to situations where the defendant signed a complaint against the plaintiff." *Rodgers v. Peoples Gas, Light & Coke Co.*, 733 N.E.2d 835, 842 (Ill. App. Ct. 2000). "[L]iability extends to all persons who played a significant role in causing the prosecution of the plaintiff, provided all of the elements of the tort are present." *Id.* Viewing disputed facts in Petrovic's favor, Chevas and Magno filed a false arrest report for aggravated battery of a police officer and resisting arrest (Pl.'s LR 56.1(b)(3)(B) ¶¶ 27, 29, 30, 33, 34, 37; Pl.'s Ex. P, Arrest Report), Birkenmayer submitted a false case report stating that Petrovic had bitten Chevas and resisted arrest (Pl.'s Ex. O, Case Report), and Cruz testified to facts as related to him by Chevas and Magno before the grand jury, which caused her to be indicted (Defs.' LR 56.1(a)(3) ¶¶ 76-77).

Second, Petrovic has raised a triable issue as to whether the *nolle prosequi* indicated her innocence. "[A] criminal proceeding has been terminated in favor of the accused when a prosecutor formally abandons the proceeding via a *nolle prosequi*, unless the abandonment is for reasons not indicative of the innocence of the accused." *Swick*, 662 N.E.2d at 1242-43. "[T]he plaintiff bears the burden of showing that the *nolle prosequi* was entered for reasons consistent with his innocence." *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 925 (7th Cir. 2001). Plaintiff can meet this burden by showing that "[t]he circumstances surrounding the abandonment of the criminal proceedings must compel an inference that there existed a lack of reasonable grounds to pursue the criminal prosecution." *Swick*, 662 N.E.2d at 1243. A *nolle prosequi* is not indicative of a plaintiff's innocence when it "is the result of an agreement or compromise with the accused, misconduct on the part of the accused for the purpose of preventing trial, mercy requested or accepted by the accused, the institution of new criminal proceedings, or the impossibility or

17

impracticability of bringing the accused to trial." *Velez v. Avis Rent A Car Sys.*, 721 N.E.2d 652, 655 (Ill. App. Ct. 1999).

The Assistant State's Attorney terminated Petrovic's criminal case via *nolle prosequi* because Chavez, the complaining witness, refused to testify at her trial. The failure of a complaining officer to appear may be a favorable termination for purpose of malicious prosecution claim. *See Woods v. Clay*, No. 01 C 6618, 2005 WL 43239, at *15 (N.D. Ill. Jan. 10, 2005). This was not a case in which there was an agreement, compromise, misconduct on the part of Petrovic for preventing trial, a mercy request, institution of new proceedings, or impossibility or impracticability of bringing Petrovic to trial. The prosecution simply abandoned the criminal proceedings because its complaining witness refused to testify. A rational jury could find that the *nolle prosequi* indicated her innocence.

Third, Petrovic has raised a genuine issue as to whether there was probable cause for Birkenmayer, Chevas and Magno to arrest her. (*See supra*, Count III: False Arrest.) However, for reasons similar to those outlined above, the Court grants defendants' motion for summary judgment as to Velazquez, Cruz and Sprandel because there is no evidence from which a reasonable jury could conclude that they had the requisite knowledge that Petrovic did not bite Chevas or resist arrest. Although Birkenmayer wrote Velazquez's name on the case report, Velazquez did not witness the events that formed the basis of the report, assist Birkenmayer in filling out the report or sign it. Similarly, Sprandel signed off on the case and arrest reports, but he was not a witness to the events and relied on Birkenmayer, Chevas and Magno's accounts of the altercation. *See Marchetta v. Chi. Transit Auth.*, No. 01 C 4838, 2002 WL 172447, at *4 (N.D. Ill. Feb. 4, 2002) ("Police officers are entitled to rely on allegations of other officers."). Further, Cruz was not a witness to the events and he was also entitled to rely on the allegations

18

of Chevas and Magno. Magno told Cruz that he saw a bite mark on Chevas after the incident. A jury could not reasonably infer, simply because Petrovic denied that she committed any crime and accused the arresting officers of excessive force, that Cruz did not reasonably believe that she had committed the crimes with which she was charged.

Fourth, because Petrovic has raised a genuine issue as to a material fact regarding whether Birkenmayer, Chevas and Magno lacked probable cause for the arrest, she has also raised a triable issue regarding malice because malice may be inferred from the lack of probable cause. *See Frye v. O'Neill*, 520 N.E.2d 1233, 1242 (Ill. App. Ct. 1988).

Thus, with regard to Count VII, Petrovic has raised a genuine issue as to a material fact regarding the first four elements of her malicious prosecution claim as to Birkenmayer, Chevas and Magno. The Court grants defendants' motion for summary judgment on Count VII as to Velazquez, Cruz and Sprandel.

In sum, the Court strikes as moot the following portions of defendants' partial summary judgment motion because Petrovic withdraws these claims: (1) Counts I-IV and VI against Sprandel; (2) Counts I and VI as to Velazquez; (3) Counts I-III and VI as to Cruz; and (4) Count VI as to Birkenmayer. The Court grants the motion as to Counts V and VII against Sprandel (and dismisses him as a defendant), Counts II, III, and VII against Velazquez and Count VII against Cruz. In all other respects, the Court denies defendants' motion for partial summary judgment.

**Conclusion**

For the reasons provided herein, the Court grants in part, denies in part and strikes as moot in part defendants' partial motion for summary judgment [doc. no. 136] and grants in part and denies in part defendants' motion to strike [doc. no. 155]. The following must proceed to trial: (1) Count I (Excessive Force) against Birkenmayer, Chevas and Magno; (2) Count II (Failure to Intervene in Use of Excessive Force) against Birkenmayer, Chevas and Magno; (3) Count III (False Arrest) against Birkenmayer, Chevas and Magno; (4) Count IV (Denial of Medical Attention) against Birkenmayer, Chevas, Magno, Velazquez and Cruz; (5) Count V (Conspiracy) against Birkenmayer, Chevas, Magno, Velazquez and Cruz; (6) Count VI (Equal Protection) against Chevas and Magno; (7) Count VII (Malicious Prosecution) against Birkenmayer, Chevas, Magno; (8) Count VIII (Respondeat Superior) against the City of Chicago; and (9) Count IX (Indemnification) against the City of Chicago. The City did not seek summary judgment as to Counts VIII and IX other than to argue that the officers were not liable with regard to Counts I-VII. As all claims have been dismissed against Sprandel, he is hereby dismissed as a defendant. At the next status hearing, the parties shall be prepared to set a date for the filing of the final pretrial order and trial.

**SO ORDERED.**        **ENTER:**

_____

9/16/09        **HON. RONALD A. GUZMAN**
United States District Judge