## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ROBIN PETROVIC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 06 C 6111 |
| | ) | |
| CITY OF CHICAGO, | ) | Judge Ronald A. Guzmán |
| PHILLIP CLINE, former | ) | |
| Superintendent of the | ) | |
| Chicago Police Department, | ) | |
| TISA MORRIS, former Chief | ) | |
| Administrator of the Office of | ) | |
| Professional Standards, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the City of Chicago, Philip Cline and Tisa Morris' motions to dismiss. For the reasons provided in this Minute Order, the Court grants the motions.

## Procedural History

Plaintiff Robin Petrovic sued the City of Chicago, Philip Cline, former superintendent of the Chicago Police Department, Tisa Morris, former Chief Administrator of the Office of Professional Standards and Chicago Police Officers James Chevas, Margaret Birkenmayer, Officer Theodore Magno[1] for depriving her of her constitutional rights pursuant to 42 U.S.C. § 1983. The parties engaged in discovery as to the defendant police officers, and the Court bifurcated discovery and trial as to Cline and Morris sued in their individual capacity and the

---

[1] Although plaintiff originally sued Officers Axel Velazquez, John Cruz and Lawrence Sprandel, she has since dismissed her claims against these officers.

*Monell* claims against the City. A jury found for plaintiff and against Chevas regarding plaintiff's excessive force claim, for plaintiff and against Chevas and the City regarding plaintiff's malicious prosecution claim, and for Chevas, Birkenmayer and Magno and against plaintiff on all other claims. The City has filed a "Certification of Entry of Judgment Against Defendant City of Chicago" that states the "entry of any judgment against the City . . . is accepted . . . only to the extent that the judgment is affirmed after any post-trial motions and/or an appeal, if an appeal is taken." (Def. City Chicago's Mot. Bar Monell Claim Lack Jurisdiction, Ex. A, Certification of Entry of J. Def. City of Chicago ¶¶ 1-3.)

## Facts

On July 24, 2005, Petrovic asked someone to call the police stating that she was the victim of a battery. (Am. Compl. ¶ 11.) She was asked to sign a blank criminal complaint, and she requested that an officer complete the form prior to her signing it. (*Id.* ¶ 12.) When the officer refused, Petrovic asked officers at the scene for their names and badge numbers and used a stranger's phone to call and leave a message on her home phone with their information. (*Id.* ¶ 13.) She was handcuffed and put in the squadrol, and at some point before the squadrol reached the police station, defendant Chevas kicked and hit her and called her a derogatory name. (*Id.* ¶ 16.)

Morris and Cline knew that the City maintained a widespread and settled policy and practice of failing to adequately train, supervise, discipline and otherwise control Chevas. (*Id.* ¶

41(a).) They also knew that the maintenance of these practices would result in preventable police abuse, including the type of unconstitutional abuse inflicted on Petrovic. (*Id.*)

Morris and Cline oversaw, acquiesced in, and even condoned the above-described policies and practices and refused to take steps to correct them. (*Id.* ¶ 41(b).) More specifically, Morris and Cline caused and participated in the denial of Petrovic's constitutional rights by, among other things, failing to: (1) monitor police officers and groups of officers who violate civilians' constitutional rights; (2) discipline police officers who violate civilians' constitutional rights; and (3) implement an effective early warning system to identify police officers and groups of officers who systematically violate civilians' constitutional rights. (*Id.* ¶ 41(c).)

Morris and Cline knew that Chevas committed misconduct similar to that alleged by Petrovic. (*Id.* ¶ 41(d).) However, they approved, assisted, condoned and/or purposely ignored Chevas' prior misconduct. (*Id.*) Petrovic alleges that because of this conduct, Morris and Cline were deliberately indifferent to the rights and safety of Petrovic. (*Id.* ¶ 41(e).) As a result of the excessive force used by Chevas, Morris and Cline's actions and inactions and the City's policy and practice, Petrovic has suffered pain, injury and emotional distress. (*Id.* ¶ 42.)

## Discussion

### Morris and Cline's Motion to Dismiss

Morris and Cline have been sued in their individual capacity and move to dismiss the Amended Complaint for failure to state a claim. Under Federal Rule of Civil Procedure

12(b)(6), "to survive a motion to dismiss a complaint's request for relief must be plausible on its face." *Brown v. JP Morgan Chase Bank*, 334 Fed. Appx. 758, 759 (7th Cir. 2009) (quotations omitted). "A claim is facially plausible when the alleged facts allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quotation omitted). "[D]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, __ U.S. ___, 129 S. Ct. 1937, 1953 (2009). "'[N]aked assertions devoid of further factual enhancement' will not do." *Brown*, 334 Fed. Appx. at 759 (quoting *Iqbal*, 129 S. Ct. at 1949).

In a section 1983 action, "where masters do not answer for the torts of their servants– the term 'supervisory liability' is a misnomer." *Iqbal*, 129 S. Ct. at 1949. "An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). "A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary." *Id.* "Without a showing of direct responsibility for the improper action, liability will not lie against a supervisory official." *Id.* Indirect approval is insufficient. *Cygnar v. City of Chi.*, 865 F.2d 827, 847 (7th Cir. 1989). Rather, "the official must actually have participated in the constitutional wrongdoing." *Id.*

This is because "[f]ailure to take corrective action cannot in and of itself violate § 1983. Otherwise the action of an inferior officer would automatically be attributed up the line to his highest superior." *Soderbeck v. Burnett County*, 752 F.2d 285, 293 (7th Cir. 1985). Thus, "a

4

failure of a supervisory official to supervise, control, or train the offending individual officers is not actionable absent a showing that the official either encouraged the specific incident of misconduct or in some way directly participated in it." *Lenard v. Argento*, 699 F.2d 874, 885 (7th Cir. 1983) (quotation omitted). "There can be liability only when there is an extremely high degree of culpability for inaction." *Id.*

Plaintiff argues that this Court already determined that the Amended Complaint stated a claim against Morris and Cline when it granted plaintiff leave to file the Amended Complaint. However, the Court issued its ruling before the Supreme Court decided *Iqbal*. 129 S. Ct. 1937. "After *Iqbal*, circuits that had held supervisors liable when they knew of and acquiesced in the unconstitutional conduct of subordinates have expressed some doubt over the continuing validity of even that limited form of liability." *Arocho v. Nafziger*, No. 09-1095, 2010 WL 681679, at *3 n.4 (10th Cir. Mar. 1, 2010) (citing *Bayer v. Monroe County Children & Youth Servs.*, 577 F.3d 186, 190 n.5 (3d Cir. 2009) ("[I]t is uncertain whether proof of such personal knowledge, with nothing more, would provide a sufficient basis for holding Bahl liable with respect to plaintiffs' Fourteenth Amendment claims under § 1983."); *Maldonado v. Fontanes*, 568 F.3d 263, 274 n.7 (1st Cir. 2009) ("Some recent language from the Supreme Court may call into question our prior circuit law on the standard for holding a public official liable for damages under § 1983 on a theory of supervisory liability.")); *see Morris v. Ley*, No. 08-2549, 331 Fed. Appx. 417, 420 (7th Cir. 2009) (holding that, pursuant to *Iqbal*, a supervisor who only approved a subordinate's actions and had no direct contact with the section 1983 plaintiff could not be held liable for any events in the case and granting summary judgment in supervisor's favor).

5

In *Iqbal*, the plaintiff, a citizen of Pakistan and a Muslim, who was arrested on criminal charges and detained, alleged that federal officials, including John Ashcroft, then-Attorney General, and Robert Mueller, then-Director of the Federal Bureau of Investigations, subjected him to unconstitutional conditions of confinement, which included beatings by lower-level government actors, based on his race, religion and/or national origin. 129 S. Ct. at 1942, 1952. The district court denied Ashcroft and Mueller's motion to dismiss the complaint for failure to allege sufficiently their involvement in the violation of a clearly established constitutional right, *i.e.*, it denied their claim of qualified immunity. *Id.* at 1946. The Court of Appeals for the Second Circuit affirmed the denial, and the Supreme Court reversed and remanded the case. The Supreme Court held that the following allegations "amount to nothing more than a formulaic recitation of the elements of a constitutional discrimination claim" and "[a]s such, the allegations are conclusory and not entitled to be assumed true":

(1) the supervisors "knew of, condoned, and willfully and maliciously agreed to subject [him] to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest";

(2) "Ashcroft was the principal architect of this invidious policy";

(3) "Mueller was instrumental in adopting and executing it."

*Id.* at 1951 (quotations omitted). The *Iqbal* Court emphasized that "[i]t is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." *Id.*
6

Likewise, in the instant case, because the following conclusory allegations merely parrot the elements of a supervisor liability claim, the Court holds that they are not entitled to the presumption of truth:

(1) "The Supervisory Defendants knew that the City maintained the widespread and settled policy and practice of failing to adequately train, supervise, discipline, and otherwise control its officers." (Am. Compl. ¶ 41(a).)

(2) "They also knew that the maintenance of these practices would result in preventable police abuse, including the type of constitutional harm inflicted on Plaintiff." (*Id.*)

(3) "The Supervisory Defendants oversaw, acquiesced in, and even condoned the above-described policies and practices and refused to take steps to correct them." (*Id.* ¶ 41(b).)

(4) "[T]he Supervisory Defendants caused and participated in the denial of Plaintiff's constitutional rights" by failing to: (a) "monitor police officers and groups of officers who violate civilians' constitutional rights;" (b) "discipline police officers who violate civilians' constitutional rights;" and (c) "implement an effective early warning system to identify police officers and groups of officers who systematically violate civilians' constitutional rights." (*Id.*)

(5) "With respect to the Defendant Officers in this case, the Supervisory Defendants knew that the Defendant Officers had a practice of committing misconduct similar to that alleged by Plaintiff. Yet, the Supervisory Defendants approved, assisted, condoned and/or purposely ignored the Defendant Officers' prior misconduct." (*Id.* ¶ 41(d).)

(6) "As such, the Supervisory Defendants were, at all times material to this Complaint, deliberately indifferent to the rights and safety of Plaintiff." (*Id.* ¶ 41(e).)

(7) "As a result of the unjustified and excessive use of force by Defendant Officers, the actions and inactions of the Supervisory Defendants and the City's policy and practice, Plaintiff has suffered pain and injury, as well as emotional distress." (*Id.* ¶ 42.)

Plaintiff argues that the *Iqbal* Court recognized that allegations that supervisors condoned discrete wrongs, *i.e.*, the beatings by lower-level governmental actors, could be grounds for inferring that the supervisors acted with wrongful intent. See 129 S. Ct. at 1952. Although the *Iqbal* Court stated that under some circumstances that could be true, it also stated that it would not be an appropriate inference in a section 1983 case against supervisors because respondeat superior liability is inapplicable. *Id.* The *Iqbal* Court explained that because the doctrine was inapplicable to Ashcroft and Mueller, plaintiff failed to state a claim in that he provided conclusory, formulaic allegations that supervisors "knew of, condoned, and willfully and maliciously agreed" to subject plaintiff to such beatings without any factual allegation to suggest that they themselves intended to discriminate against him. *Id*. at 1951-52.

So it is in this case. Petrovic has included formulaic recitations of the elements of a supervisor liability claim without any <u>factual</u> allegations to create a plausible suggestion that Cline and Morris, not merely indirectly approved, but encouraged the specific incident of misconduct involving Petrovic and Chevas or in some way directly participated in the incident. Thus, the Court grants Cline and Morris' motion to dismiss and dismisses all claims against them without prejudice.

**The City's Motion to Dismiss**

The City moves to dismiss the Amended Complaint pursuant to Rule 12(b)(1). There are two kinds of Rule 12(b)(1) motions: those that attack the sufficiency of the jurisdictional allegations and those that attack the factual basis for jurisdiction. Facial attacks are subject to the same standard as motions pursuant to Rule 12(b)(6); that is, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003). However, in factual attacks, like this one, the Court may consider affidavits and other evidence in deciding the motion. *Id.* In either case, the burden of proving that jurisdiction exists rests with the plaintiff. *Id.*

Although the City argues that its "Certification of Entry of Judgment Against Defendant City of Chicago" moots the case or controversy against it, that document does not, at least in its present form.[2] The City's indemnification obligation as to compensatory damages and reasonable attorney's fees and expenses must expressly be made both unconditional and irrevocable. Further, because municipal liability under section 1983 permits plaintiff to seek an award of nominal damages not to exceed $1.00 "upon proof of a violation of a substantive constitutional right even in the absence of actual compensable injury," *Amato v. City of Saratoga Springs*, 170 F.3d 311, 317 (2d Cir. 1999), see *Carey v. Piphus*, 435 U.S. 247, 253-67 (1978), the City must also add nominal damages to the indemnification obligation in order to

---

[2]For an example of a proper certification of indemnification, see *Scott v. City of Chicago*, No. 07 C 3684, document numbers 50 and 59.

moot the claim against it.  If these changes are made, the City may file the amended certification and an amended motion to dismiss for the Court's consideration.

## Conclusion

For the reasons provided herein, the Court grants Morris and Cline's motion to dismiss [doc. no. 297], and dismisses all claims against them without prejudice.  The Court grants plaintiff leave to file a Second Amended Complaint within eleven days of the date of this Memorandum Opinion and Order and reminds her of her obligations under Federal Rule of Civil Procedure 11.  The Court denies the City's motion to dismiss without prejudice [doc. no. 299].

**SO ORDERED**	**ENTERED:  March 30, 2010**

**HON. RONALD A. GUZMAN**
**United States Judge**